## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROY ADLARD, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OVASCIENCE, INC., CHRISTOPHER KROEGER, RICHARD ALDRICH, JEFFREY D. CAPELLO, MARY FISHER, JOHN HOWE, III, MARC KOZIN, and JOHN SEXTON, <br><br> Defendants. | Civil Action No. 1:18-cv-12332 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Roy Adlard ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

### NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of OvaScience, Inc. ("OvaScience" or the "Company") against OvaScience and the members of its Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a) and to enjoin the vote on a proposed transaction, pursuant to which OvaScience will be acquired by Millendo Therapeutics, Inc. ("Millendo") through OvaScience's wholly owned subsidiary Orion Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On August 9, 2018, OvaScience and Millendo issued a press release announcing they had entered into an Agreement and Plan of Merger dated August 8, 2018 (as amended on September 25, 2018 and November 1, 2018, the "Merger Agreement"), pursuant to which OvaScience will merge with Millendo in an all-stock transaction.  The combined company will have a valuation of approximately $246 million post-financing.  After giving effect to financing, current OvaScience securityholders will own approximately 17% of the combined company, with current Millendo securityholders (assuming the Millendo option pool is fully allocated) owning approximately 63% of the combined company (exclusive of participation in the associated financing), and investors participating in the financing will acquire approximately 20% of the combined company, in each case excluding the available OvaScience option pool and certain out-of-the-money options and subject to adjustment based on OvaScience's anticipated net cash balance at the time of closing.

3.      On November 6, 2018, OvaScience filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.  The Proxy Statement, which recommends that OvaScience stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for Millendo, relied upon by OvaScience's financial advisor, Ladenburg Thalmann & Co., Inc. ("Ladenburg"), in its financial analyses; and (ii) the background process leading to the Proposed Transaction and Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as OvaScience stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, OvaScience's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

3.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  OvaScience is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

5.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of OvaScience.

6.     Defendant OvaScience is a Delaware corporation with its principal executive offices located at 9 Fourth Avenue, Waltham, Massachusetts, 02451.   OvaScience is a pharmaceutical company focused on the discovery and development of new treatment options for women and families struggling with infertility.   The Company's common stock is traded on the Nasdaq Global Market under the ticker symbol "OVAS."

7.     Defendant Christopher Kroeger ("Kroeger") has been Chief Executive Officer ("CEO") and a director of the Company since September 2017.

8.     Defendant Rich Aldrich ("Aldrich") co-founded OvaScience in April 2011, has been Lead Independent Director of the Board since March 2016 and a director of the Company since July 2011.  Defendant Aldrich previously served as Chairman of the Board from March 2012 until January 2016.  Defendant Aldrich is a co-founder of the Longwood Fund, LP ("Longwood Fund"), a venture capital investment fund with investments in Millendo.  Longwood Fund is participating in the pre-close financing related to the Proposed Transaction.

9.     Defendant Jeffrey D. Capello ("Capello") has been a director of the Company since March 2012.

10.     Defendant Mary Fisher ("Fisher") has been a director of the Company since June 2013.

11.     Defendant John Howe, III ("Howe") has been a director of the Company since June 2015.

12.     Defendant Marc Kozin ("Kozin") has been a director of the Company since January 2014.

13.     Defendant John Sexton ("Sexton") has been a director of the Company since April 2015.

14.     Defendants Kroeger, Aldrich, Capello, Fisher, Howe, Kozin and Sexton are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

15.     Millendo is a late-stage biopharmaceutical company focused on developing novel treatments for orphan endocrine diseases where current therapies do not exist or are insufficient. Millendo is a private company with its principal executive offices located at 301 N. Main Street, Suite 100, Ann Arbor, Michigan, 48104.

16.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of OvaScience.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own OvaScience common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

18.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

19.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of October 26, 2018, there were 35,826,429 shares of Company common stock outstanding. All members of the Class may be identified from records maintained by OvaScience or its transfer

agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

20.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

a)      Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

c)      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

21.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

22.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

23.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

24.     Historically, OvaScience has focused on the discovery and development of treatment options for those struggling with infertility by using egg precursor ("EggPC") cells.

EggPC cells are undifferentiated germ cells from fetal development that may have the capacity to mature into eggs.  OvaScience's portfolio of treatment options includes proprietary methods to isolate EggPC cells from a woman's own ovarian tissue.  These treatment options include OvaPrime, which could help restore a woman's egg production, OvaTure, which could eliminate the need for hormone stimulation, and AUGMENT treatment which is designed to improve fertilization and pregnancy rates in the in vitro fertilization process.

25.     In June 2017, OvaScience announced that it would discontinue ongoing efforts related to the AUGMENT treatment outside of North America, and would continue to focus on advancing the clinical development of its OvaPrime program and the preclinical development of its OvaTure program.  The Company also announced it would be reducing its workforce.

26.     In January 2018, OvaScience announced a further restructuring of its organization and an additional workforce reduction.

27.     In March 2018, OvaScience announced preliminary data for its Phase 1 clinical trial of OvaPrime in women with primary ovarian insufficiency and poor ovarian response.  The trial was unlikely to demonstrate strong signals on secondary endpoints.  The Company subsequently completed additional preclinical studies and based on results from these studies, determined to scale back investment in its research and development efforts to focus on evaluating strategic alternatives.

28.     On March 29, 2018, the Board voted to establish a Business Development Committee to assist in reviewing OvaScience's strategic options.  On April 12, 2018, OvaScience engaged Ladenburg to assist OvaScience in conducting its strategic review.

29.     In conjunction with the Company's first quarter 2018 financial results, on May 3, 2018, OvaScience announced it had decided to undergo a restructuring in order to streamline

operations and reduce its cost structure.  The Company determined to scale back investments in its OvaPrime research and development efforts, including pausing its planned Phase 1b/2a clinical trial.  The Company also decided to continue progressing the OvaTure program with a small internal scientific team and offering AUGMENT to patients in Japan through an exclusive license to IVF Japan Group.

30.     Following a May 3, 2018 Board meeting, Ladenburg initiated a process to potential merger candidates.

31.     By early June 2018, 42 companies, including Millendo, had submitted indications of interest and entered into confidentiality agreements with the Company.  Ladenburg and OvaScience selected eight companies as finalists in the life sciences drug development field.  The finalists' initial proposals offered company stockholders 13.5% to 29.0% of stock ownership in the combined entities, valuing the existing OvaScience pipeline at a range of $0 to $2.5 million, and valuing the OvaScience listing at a range of $2.0 million to $10.0 million.  Taken together, the finalists' bids ascribed an aggregate value to the Company in a range of $39.5 million to $47.0 million.

32.     At a June 19, 2018 Board meeting, the Board and Ladenburg determined to advance discussions with Millendo and bidders referred to in the Proxy Statement as "Company A" and "Company B."  According to the Proxy Statement, "Company A's lead clinical programs appeared to be based on an exciting scientific discovery" potentially representing "a significant opportunity" that could be "favorably received by the public markets."  Proxy Statement at 134-35.  Company B controlled an asset that had received regulatory approval for use outside the U.S. and "was also believed to have a strong, recognizable management team."  *Id*. at 135.

33.     Despite OvaScience's favorable views of Company A and Company B, at a June

26, 2018  Board meeting, following a discussion regarding "recent developments in the process of negotiations with Millendo," the Board unanimously determined to focus on negotiating a final, non-binding term sheet with Millendo.  On June 28, 2018, OvaScience and Millendo executed a term sheet that included a 45-day period of exclusivity, preventing further discussions between OvaScience and Company A or Company B.

34.     Throughout July and August 2018, OvaScience and Millendo held discussions and negotiations regarding the Proposed Transaction.  On August 8, 2018, Ladenburg rendered its fairness opinion and the Board approved the Merger Agreement.  Later that day, Millendo and the Company executed the Merger Agreement.

35.     On September 25 and November 1, 2018, respectively, OvaScience and Millendo executed the first and second amendments to the Merger Agreement.  Among other provisions, the second amendment lowered Millendo's valuation from $191.9 million to $155.0 million and lowered OvaScience's valuation to $45.5 million.  In light of these valuation changes, Ladenburg rendered a revised fairness opinion to the Board on October 26, 2018.

**The Proposed Transaction**

36.     On August 9, 2018, OvaScience and Millendo issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> WALTHAM, Mass. and ANN ARBOR, Mich., August 9, 2018 — OvaScience$^{SM}$ (Nasdaq:OVAS) and privately-held Millendo Therapeutics, Inc., a clinical-stage biopharmaceutical company focused on developing novel treatments for orphan endocrine diseases, announced today that they have entered into a definitive agreement under which OvaScience will merge with Millendo in an all-stock transaction. The merged company will focus on advancing Millendo's pipeline of distinct and transformative treatments for orphan endocrine diseases. Upon shareholder approval, the combined company is expected to operate under the name Millendo Therapeutics and trade on the Nasdaq Capital Market under the ticker symbol MLND.

An investor syndicate that includes New Enterprise Associates, Frazier Healthcare Partners, Roche Venture Fund, Innobio managed by Bpifrance, Osage University Partners, Altitude Life Science Ventures, Adams Street Partners, and Longwood Fund has committed to invest $30 million in the combined company. This financing will help fund the further development of Millendo's lead assets, livoletide (AZP-531) and nevanimibe (ATR-101), and is expected to close before or concurrently with the completion of the merger. The total cash balance of the combined company following the closing of the merger and the financing is expected to be at least $70 million.

Millendo is leveraging its deep understanding of recent biological discoveries in endocrinology to build a strong pipeline based on its clinically-validated molecules with differentiated mechanisms. Millendo's lead asset, livoletide, is an unacylated ghrelin analogue being developed for the treatment of Prader-Willi syndrome, a rare genetic disease characterized by hyperphagia, a chronic unrelenting hunger, that leads to obesity, metabolic dysfunction, reduced quality of life and early mortality. Livoletide demonstrated positive effects in improving hyperphagia and food-seeking behaviors in a Phase 2 study in Prader-Willi syndrome and is expected to advance into a pivotal Phase 2b/3 study in the first quarter of 2019. Millendo is also developing nevanimibe, an ACAT1 inhibitor for the treatment of two orphan adrenal diseases: classic congenital adrenal hyperplasia (CAH) and endogenous Cushing's Syndrome. Nevanimibe demonstrated positive proof-of-concept and a favorable safety profile in an open-label Phase 2 trial in CAH and is expected to advance into a Phase 2b study in the third quarter of 2018.

"We are excited about the opportunities created by this merger, as it positions us to become a leader in rare endocrine diseases with the funding needed to pursue the potential approval and commercialization of our first-in-class programs," said Julia Owens, Ph.D., President and Chief Executive Officer of Millendo. "Our objective has always been to deliver meaningful therapies to patients who do not have sufficient treatment options, and with this merger, the compelling clinical data for our programs, and the initiations of late-stage trials for both livoletide and nevanimibe expected in the months ahead, we are optimistic that we can deliver on this vision."

"Following an extensive and thorough review of strategic alternatives, we believe that this merger with Millendo is the best path forward and has the potential to deliver significant and immediate value to OvaScience shareholders," said Christopher Kroeger, M.D., Chief Executive Officer of OvaScience. "We are certain that the strength and dedication of the Millendo leadership team provides our combined company with the capabilities to develop new and much-needed therapies for patients with orphan endocrine diseases."

37.     On November 1, 2018, OvaScience and Millendo entered into the second amended

Merger Agreement to increase the size of the associated financing in the Proposed Transaction.

According to the press release announcing the amendment:

> Great Point Partners has joined the previously-disclosed investor syndicate, which includes New Enterprise Associates, Frazier Healthcare Partners, and Roche Venture Fund, among others, bringing the total expected proceeds of the financing to approximately $50 million in the combined company, at the same valuation as the merger. Together with the approximately $37 million in net cash expected from OvaScience at closing, the total proceeds of the merger and financing are expected to be approximately $87 million. The proceeds will fund the further development of Millendo's lead assets, livoletide and nevanimibe. The financing and merger are expected to close in the fourth quarter of 2018.
>
> * * *
>
> In conjunction with the additional investment by Great Point Partners, the estimated exchange ratio in the merger agreement has been revised, giving OvaScience securityholders greater ownership of the combined company – now with a post-money valuation of approximately $246 million - than pursuant to the former exchange ratio. On a pro forma basis, current OvaScience securityholders will own approximately 17% of the combined company, current Millendo securityholders (assuming the Millendo option pool is fully allocated) will own approximately 63% of the combined company (exclusive of participation in the associated financing), and investors participating in the financing will acquire approximately 20% of the combined company, in each case excluding the available OvaScience option pool and certain out-of-the-money options and subject to adjustment based on OvaScience's anticipated net cash balance at the time of closing.

**The Proxy Statement Contains Material Misstatements and Omissions**

38.     The defendants filed a materially incomplete and misleading Proxy Statement

with the SEC and disseminated it to OvaScience's stockholders.   The Proxy Statement

misrepresents or omits material information that is necessary for the Company's stockholders to

make an informed decision whether to vote their shares in favor of the Proposed Transaction.

39.     Specifically, as set forth below, the Proxy Statement fails to provide Company

stockholders with material information or provides them with materially misleading information

concerning: (i) the financial projections for Millendo, relied upon by OvaScience's financial

advisor, Ladenburg, in its financial analyses; and (ii) the background process leading to the

Proposed Transaction and Company insiders' potential conflicts of interest.   Accordingly,

OvaScience stockholders are being asked to vote in favor of the Proposed Transaction without all

material information at their disposal

***Material Omissions Concerning the Financial Projections for Millendo***

40.      The Proxy Statement omits material information regarding projections for

Millendo that were provided to and relied upon by Ladenburg for its analyses.

41.      For example, the Proxy Statement sets forth:

> In connection with [its August and October fairness opinions], Ladenburg
> Thalmann . . .  among other things:
>
> - Reviewed and analyzed certain internal financial analyses, projections as to
>   cost and expenses, reports, preliminary internal market opportunity
>   assumptions and other information concerning Millendo prepared by the
>   management of Millendo as well as projections for Millendo prepared by
>   the management of OvaScience as adjusted and provided to Ladenburg
>   Thalmann by management of OvaScience and utilized per instruction of
>   OvaScience;
>
> * * *
>
> - Reviewed certain pro forma financial effects of the Merger;

Proxy Statement at 144, 155.  Similarly, with the respect to the *Discounted Cash Flow Analysis*

Ladenburg performed in connection with its August and October fairness opinions, the Proxy

Statement states:

> Ladenburg Thalmann reviewed and analyzed certain internal financial analyses,
> projections as to cost and expenses, reports, preliminary internal market
> opportunity assumptions and other information concerning Millendo prepared by
> the management of Millendo as well as projections for Millendo prepared by the
> management of OvaScience as adjusted and provided to Ladenburg Thalmann by
> management of OvaScience and utilized per instruction of OvaScience.

*Id.* at 150, 161.

42.     Although the Proxy Statement discloses certain "[f]inancial [p]rojections for Millendo as [p]repared by Ladenburg Thalmann" (*see id,* at 154, 165), the Proxy Statement fails to disclose material information concerning the projections for Millendo prepared by Millendo and OvaScience management, respectively.  Specifically, the Proxy Statement fails to disclose: (i) the internal financial analyses, projections as to cost and expenses, reports, preliminary internal market opportunity assumptions and other information concerning Millendo prepared by the management of Millendo; and (ii) the projections for Millendo prepared by the management of OvaScience as adjusted and provided to Ladenburg by management of OvaScience.

43.     The omission of this material information renders the statements in the "Projected Opinion of the OvaScience Financial Advisor as of August 8, 2018," "Opinion of the OvaScience Financial Advisor as of October 26, 2018," "Financial Projections," and "Financial Projections used in connection with the October Opinion" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Sale Process and Company Insiders' Potential Conflicts of Interest***

44.     The Proxy Statement fails to disclose material information concerning the sale process and potential conflicts of interest faced by OvaScience insiders.

45.     For example, the Proxy Statement sets forth that:

Longwood Fund III, L.P., an investment fund, has agreed to purchase $662,933.33 of shares in the Pre-Closing Financing, and to have $241,066.67 of unsecured convertible Promissory notes issued to it by Millendo cancelled as part of that financing and [] Richard Aldrich, OvaScience's Lead Independent Director, is one of the managers of Longwood Fund III GP LLC, which is the general partner of Longwood Fund III, LP.

Proxy Statement at 166.  The Proxy Statement fails, however, to disclose in connection with the sale process leading up to the Proposed Transaction: (i) when defendant Aldrich, co-founder and

General Partner of Longwood Fund, informed the Board of his conflict of interest in light of Longwood Fund's investment in Millendo; (ii) whether defendant Aldrich recused himself from Board discussions concerning a potential merger with Millendo; and (iii) defendant Aldrich's role in negotiations concerning Longwood Fund's involvement in the Pre-Closing Financing, the details thereof, and whether the Board was apprised of such negotiations.

46.     In addition, with respect to the sale process leading up to the Proposed Transaction, the Proxy Statement sets forth that following the eight finalist companies' June 19, 2018 presentations, "there was consensus on the part of the members of the Business Development Committee and the OvaScience management team in favor of advancing discussions and diligence efforts with Millendo, as well as two other candidates, Company A and Company B." *Id.* at 135. Then, at a June 26, 2018 Board meeting, "OvaScience management and representatives of Ladenburg described **recent developments in the process of negotiations with Millendo**, and the deliberations that had taken place to select the finalists in the process." *Id.* (emphasis added). Thereafter, the Board unanimously determined to focus on negotiating a final term sheet with Millendo and executed a term sheet with a 45-day period of exclusivity.  The Proxy Statement fails to disclose the "recent developments in the process of negotiations with Millendo" as presented by OvaScience management and representatives of Ladenburg to the Board at its June 26, 2018 meeting, which apparently caused the Board to expedite negotiations with Millendo.

47.     Finally, according to the Proxy Statement, "[p]ursuant to the Merger Agreement, all of the current directors of OvaScience, other than John Howe, III., M.D., a designee selected by OvaScience to remain on OvaScience's board of directors, shall resign from OvaScience's board of directors at or prior to the Effective Time." *Id.* at 342.  The Proxy Statement, however, fails to disclose the details of all board membership-related discussions and negotiations that occurred

between Millendo on the one hand, and OvaScience Board members and executives on the other, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Millendo's prior proposals or indications of interest mentioned participation in the board of directors of the surviving corporation.

48.     The omission of this information renders the statements in the "Background of the Merger" and "Executive Officers and Directors of the Combined Organization Following the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the financial projections for Millendo, the background process leading to the Proposed Transaction, and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

54.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

56.     Plaintiff repeats all previous allegations as if set forth in full.

57.     The Individual Defendants acted as controlling persons of OvaScience within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of OvaScience, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

60.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.   As a direct and proximate result of defendants' conduct, OvaScience's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of OvaScience, and against defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to OvaScience stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 6, 2018

By   */s/ Mitchell J. Matorin*
         Mitchell J. Matorin (BBO# 649304)
         MATORIN LAW OFFICE, LLC
         18 Grove Street, Suite 5
         Wellesley, Massachusetts 02482
         (781) 453-0100
         mmatorin@matorinlaw.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*